Rockingham
No. 95-115

ETTLINGEN HOMES, INC.

v.

TOWN OF DERRY & a.

August 12, 1996

*Sumner F. Kalman, Attorney at Law, P.C.*, of Plaistow (*Sumner F. Kalman* on the brief and orally), for the plaintiff.

*Boutin & Solomon, P.A.*, of Londonderry (*Edmund J. Boutin* and *Gary H. Bernier* on the brief, and *Mr. Boutin* orally), for the defendants.

BROCK, C.J. The plaintiff, Ettlingen Homes, Inc., appeals the Superior Court (*Goode,* J.) order upholding the decision of the Derry Planning Board (planning board) denying its application for subdivision approval. We reverse and remand.

The trial court found the following facts. The plaintiff owns an eighty-one-acre parcel of land in Derry which it seeks to subdivide for residential development. In 1994, the plaintiff applied for

preliminary subdivision approval to divide the parcel into twenty-three residential lots. After a public hearing, the planning board denied the application because it was premature, relying upon the town's subdivision regulations and RSA 674:36, II(a) (1986).

The plaintiff sought review of the planning board's decision in superior court under RSA 677:15 (1986) (amended 1991, 1995). After a hearing, the superior court concluded that the plaintiff had not met its burden of demonstrating "by a balance of the probabilities," *Durant v. Town of Dunbarton*, 121 N.H. 352, 357, 430 A.2d 140, 143–44 (1981) (quotation omitted) (applying prior law), that the planning board's decision was illegal or unreasonable, *see* RSA 677:15, I. The plaintiff appealed, arguing that the planning board's denial of its subdivision application was invalid under the "scattered and premature" language in the town's subdivision regulations and constituted illegal growth control.

On appeal, we will not reverse the trial court's conclusion "unless its decision is not supported by the evidence or is legally erroneous." *Zukis v. Town of Fitzwilliam*, 135 N.H. 384, 387, 604 A.2d 956, 958 (1992) (quotations omitted). "If any of the board's reasons for denial support its decision, then the plaintiff's appeal must fail." *Durant*, 121 N.H. at 354, 430 A.2d at 142.

Like *Zukis*, 135 N.H. at 387, 604 A.2d at 958, and *Garipay v. Town of Hanover*, 116 N.H. 34, 35, 351 A.2d 64, 65 (1976), this case does not ask whether a town's growth control provisions are adequate. *See* RSA 674:22 (1986), :23 (1986 & Supp. 1995). Our inquiry, rather, is whether the planning board exceeded its subdivision control authority in denying the plaintiff's application. Planning boards are empowered under RSA 674:36, II(a) to include in subdivision regulations provisions

> against such scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of the lack of water supply, drainage, transportation, schools, fire protection, or other public services, or necessitate the excessive expenditure of public funds for the supply of such services.

The town enacted subdivision regulations mirroring an earlier version of this provision, authorizing the board to deny a subdivision request based upon

> such factors as scattered or premature subdivision of land as would involve danger or injury to health, safety, or prosperity by reason of lack of water supply, drainage, transportation, or other public services, or necessitate an

excessive expenditure of public funds for the supply of such services.

DERRY LAND DEVELOPMENT CONTROL REGULATIONS V, B(4) (1993); see RSA 36:21 (1970) (repealed 1983).

Both *Zukis* and *Garipay* involved the adequacy of existing roads in a particular area to accommodate the increased traffic that a proposed subdivision development would cause. *See Zukis*, 135 N.H. at 386, 604 A.2d at 957; *Garipay*, 116 N.H. at 35, 351 A.2d at 65. The question was how an existing road, which in each case was inadequate to accommodate existing residential development in the area, could cause further development to be "premature." *See Zukis*, 135 N.H. at 386, 604 A.2d at 957; *Garipay*, 116 N.H. at 36, 351 A.2d at 65. We stated in this regard that the planning board's duty, when considering whether a proposed subdivision will create scattered or premature development, is to "ascertain what amount of development, in relation to what quantum of services available, will present the hazard described in the statute and regulations. At the point where such a hazard is created, further development becomes premature." *Garipay*, 116 N.H. at 36, 351 A.2d at 65. The focus of the inquiry is upon the effect of the proposed development on the community, not the effect of further development in general on the community. *See* 5 E. ZIEGLER, RATHKOPF'S THE LAW OF PLANNING AND ZONING § 64.02, at 64–16 (1996).

Comprehensive growth control planning assesses and balances the development concerns of the entire community, RSA 674:22, with less emphasis on the interests of any one particular landowner. 2 ZIEGLER, *supra* § 13.03[2], at 13–22 to 13–23. The application of subdivision regulations designed to prevent "scattered" or "premature" development, on the other hand, focuses more directly on a particular development, including consideration of the highest and best use of a particular tract of land, the compatibility of a particular use with the remainder of the community, and the protection of the financial interests of the purchasers, subdividers, and the local government unit. 5 ZIEGLER, *supra* § 64.01[1].

"Any denial of subdivision approval will naturally have the secondary effect of limiting growth." *Zukis*, 135 N.H. at 387, 604 A.2d at 958. The planning board "must consider current as well as anticipated realities" when evaluating the "maturity" of a particular subdivision request. *Patenaude v. Town of Meredith*, 118 N.H. 616, 621, 392 A.2d 582, 585 (1978). We turn now to the "realities" that the planning board considered in the instant case.

The capacity of the Derry schools to accommodate even the existing level of students was an important factor in both the trial

court's and the planning board's decisions. The current version of RSA 674:36, II(a) explicitly provides for consideration of the adequacy of school facilities in determining whether a subdivision is premature. The local ordinance provides for consideration of "other public services," DERRY LAND DEVELOPMENT CONTROL REGU-LATIONS V, B(4), which include school facilities. The trial court held that

> although the current educational facilities and resources may be barely sufficient to meet the needs of the existing community, when an additional 23 (3 bedroom) home sub-division, as proposed by petitioner, will place at risk the school district's ability to provide adequate public educa-tion, thus endangering the well-being of its population, the statute and regulations authorize the Planning Board to find the proposal premature.

There was testimony at the planning board hearing and at the trial on this issue. Planning board member Frank Scott stated at the hearing that "the major problem" at the time was "the school district." He further stated:

> I think right now . . . this Board has to look at what the town has to get done. And I firmly believe we cannot afford to put one more child in that school, in the school district who isn't already living in this town. . . .

> I'd like to see us try to work with the developers. . . . There's basically not a whole lot wrong with that plan. . . . It's just simply we can't afford to handle services that go along with allowing it to get built right now. *And we're not saying don't ever do it. All we're saying is just don't do it now.*

(Emphasis added.) These are the classic considerations in favor of growth control regulation. *See* D. HAGMAN & J. JUERGENSMEYER, URBAN PLANNING AND LAND DEVELOPMENT CONTROL LAW § 7.2, at 192–93 (1986).

■■ "RSA 674:36, II(a) serves to ensure that the town, through its planning board, retains control over its expenditures on the development, improvement, and maintenance of town services to new subdivisions." *Stillwater Condo. Assoc. v. Town of Salem*, 140 N.H. 505, 508, 668 A.2d 38, 41 (1995) (quotation and emphasis omitted). The provision does not serve to replace comprehensive growth control regulation. *See Zukis*, 135 N.H. at 387, 604 A.2d at

958. The adequacy of school facilities is a legitimate concern of the town; the circumstances of the school facilities, however, do not constitute a "danger . . . to health, safety, or prosperity by reason of the lack of . . . schools." RSA 674:36, II(a). Further testimony at the planning board meeting held on the plaintiff's application makes it clear that the town was aware of the need to proceed with formal growth control regulation, including the need to formulate a comprehensive plan. The planning board's action in denying the plaintiff's proposal on the grounds of "prematurity" plainly was taken to control growth, and it exceeded the board's statutory authority under RSA 674:36, II(a). *See Durant*, 121 N.H. at 354, 430 A.2d at 142.

*Reversed and remanded.*

All concurred.